UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KYLE C. SUNDBERG,
        Petitioner,

v.                                                    CASE NO. 5:07-cv-478-Oc-10GRJ

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,
        Respondents.
_____/

## ORDER

This case is before the Court on a petition for habeas corpus relief filed pursuant to

28 U.S.C. § 2254 by Kyle C. Sundberg ("Petitioner") alleging eight claims for relief (Doc.

1).  Upon consideration of the petition, this Court ordered Respondents to show cause why

the relief sought in the petition should not be granted (Doc. 5).  Thereafter, Respondents

filed a response to the petition in compliance with this Court's instructions and with the

*Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 13).

Petitioner filed a reply (Doc. 15) to the response.  Upon due consideration of the petition,

the response, the reply and the state-court record, the Court concludes that the petition

must be denied.[1]

I.      **Procedural History**

On January 11, 2001, Petitioner was charged by information with aggravated battery

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254.

(count I) and false imprisonment (count II) (App. A at 16).[2]  On October 31, 2002, he was tried by jury and found guilty as charged on both counts (App. A at 102-03). The trial court sentenced Petitioner as a habitual felony offender to concurrent sentences of twenty-three years on count one and ten years on count two (App. A at 233-39).

Petitioner appealed to the Florida Fifth District Court of Appeal raising one issue (App. B).  Appellate counsel moved to withdraw from the case at Petitioner's request (App. D, F).  Appellate counsel's motion to withdraw was granted and Petitioner proceeded *pro se*, raising four issues on appeal (App. E, F).  On November 19, 2004, the Fifth District Court of Appeal affirmed (App. J); *Sundberg v. State*, 888 So. 2d 87 (Fla. 5th DCA 2004). Mandate issued on January 5, 2005 (App. M). Petitioner then filed Notice to Invoke Discretionary Jurisdiction with the Florida Supreme Court and review was denied on June 9, 2005 (App. L, P); *Sundberg v. State*, 906 So. 2d 1059 (Fla. 2005).

On March 7, 2005, Petitioner filed a Florida Rule of Criminal Procedure 3.850 Motion for Post-conviction Relief raising eight issues (App. Q at 1-52).  An evidentiary hearing was held on October 3, 2005 and November 29, 2005 (App. Q at 134-342).  On April 5, 2006, the state court denied the motion in a detailed order (App. Q at 456-522). On March 6, 2007, the Florida Fifth District Court of Appeal *per curiam* affirmed and mandate issued on April 20, 2007 (App. W, Y); *Sundberg v. State*, 953 So. 2d 543 (Fla. 5th DCA 2007).

On June 14, 2007, Petitioner filed a Petition for Writ of Habeas Corpus with Florida's Fifth District Court of Appeal raising one issue (App. AA). The Florida Fifth District Court

---

[2]Unless otherwise noted, referenced appendices refer to exhibits in Respondents' Appendix filed on April 28, 2008.

of Appeal denied the petition on December 10, 2007 (App. CC).

On May 31, 2007, Petitioner filed a Motion for Relief from Judgment with the trial court arguing that his former defense counsel committed a fraud upon the court at the evidentiary hearing relating to his Rule 3.850 motion for post-conviction relief (App. EE). On June 5, 2007, the trial court denied the motion (App. FF).  The Florida Fifth District Court of Appeal *per curiam* affirmed on January 29, 2008 (App. GG, HH).  Mandate issued on March 12, 2008. *Sundberg v. State*, 975 So. 2d 1154 (Fla. 5th DCA 2008).

On November 28, 2007, Petitioner filed the instant petition for writ of habeas corpus with this court raising eight issues (Doc. 1).

## II.   Governing Legal Principles

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A.  Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The United States Supreme Court has clarified the meanings of "contrary to" and "unreasonable application" as used in 28 U.S.C. § 2254(d)(1):

> [Section] 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meanings. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue

made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### B.      Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the United States Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] 466 U.S. 668, 687-88 (1984).  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  Therefore, a court, when deciding an ineffective assistance of counsel claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.  Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 91993), the Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

> interested in grading lawyers' performances; we are interested in whether the
> adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).   Under

those rules and presumptions, "the cases in which habeas petitioners can properly prevail

on the ground of ineffective assistance of counsel are few and far between."   *Rogers v.*

*Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

      Finally, because the "components of the ineffectiveness inquiry are mixed questions

of law and fact, . . . a state court conclusion that counsel rendered effective assistance is

not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. §

2254(d)."   *Strickland*, 466 U.S. at 698.   Nonetheless, "state court findings of fact made in

the course of deciding an ineffectiveness claim are subject to the deference requirement

of § 2254(d)."   *Id.*

## III.   <u>Analysis</u>

      The issues in grounds one through six and ground eight were raised in Petitioner's

Rule 3.850 motion for post conviction relief.   Ground seven was raised on direct appeal.

The state court denied each ground and the Florida Fifth District Court of Appeal affirmed

the lower court's ruling.   Because there are qualifying state court decisions in which each

claim was adjudicated on the merits, this Court will apply the deferential standard for federal

court review as required under 28 U.S.C. § 2254(d).   The trial court correctly utilized the

standard set forth in *Strickland v. Washington* in evaluating Petitioner's ineffective

assistance of counsel claims (App. Q at 456-62).

### A.   **Ground One**

As ground one, Petitioner asserts that defense counsel ("counsel") was ineffective

because  he denied Petitioner the opportunity to testify on his own behalf (Doc. 1 at 6).

Specifically, Petitioner contends that counsel threatened to withdraw from the case if

Petitioner insisted on testifying and that "counsel deliberately and through negligence

interfered with [his] Constitutional right to testify which he would have otherwise exercised

in a 'she said', 'he said' case with no overwhelming evidence." (Doc. 1 at 6).  Petitioner

raised this issue as ground one of his Rule 3.850 motion for post-conviction relief and the

trial court denied relief (App. Q at 457-58).

In his Rule 3.850 motion,[4] Petitioner alleged that, in the presence of a courtroom

bailiff, counsel told him that Petitioner could not testify and if he insisted on doing so, he

would withdraw from the case (App. Q at 6).  As a result, Petitioner contends that he was

afraid to exercise his right to testify (App. Q at 6).  Petitioner alleges that he was prejudiced

by counsel's refusal to allow him to testify because his testimony "would have [cast]

reasonable doubt as to the guilt in this case." (App. Q at 6).  In the order denying relief, the

state court noted that the trial court had conducted a detailed colloquy and determined that

Petitioner's decision not to testify was knowing, intelligent, and voluntary.  The trial court

also noted that counsel, while admitting that he had advised Petitioner not to testify, denied

threatening to withdraw from representation if he did so (App. Q at 458).

Petitioner argues that the state court's denial of this claim was an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings

because the state court failed to make specific credibility determinations and because the

state court failed to acknowledge a "Freudian Slip" of counsel's testimony as to this issue

---

[4]Petitioner expressly relies on the allegations and arguments made in his Rule 3.850 motion for post-conviction relief to support the claims in the instant petition (Doc. 1 at 8).

(Doc. 1 at 8, Doc. 15 at 3).  The record supports the state court's determination.

After the close of the state's case, the court inquired as to whether Petitioner intended to present evidence (App. A at T-165).[5] Counsel indicated that no evidence would be presented and the following exchange occurred:

COURT:          . . . Mr. Sundberg, let me ask you some questions directly.  By asking these questions I am not suggesting that you should or should not testify.  That's your decision.  But I want to make certain it is a knowing and intelligent and voluntary decision on your part.

Is it your decision not to testify in this case?

PETITIONER:     Yes.

COURT:          And I take it you made that decision after conferring with your attorney?

PETITIONER:     Yes.

COURT:          Did anybody threaten you in any way to get you to make that decision?

PETITIONER:     No.

COURT:          And once again, that is a free, knowing, intelligent and voluntary decision on your part?

PETITIONER:     Yes.

(App. A at T-166-67).  Although the state court found that this colloquy shows that Petitioner's waiver was knowing, intelligent, and voluntary, Petitioner argues that he was ordered by trial counsel to answer the court's questions in this manner and that counsel threatened to withdraw if Petitioner insisted upon testifying (Doc. 1 at 7; App. Q at 6).

---

[5]Because the trial transcript contained within Appendix A is not Bates numbered, the trial transcript will be referred to by the original transcript numbers (App. A at T-____).

At the evidentiary hearing, counsel denied threatening to withdraw from Petitioner's case if he testified (App. Q at 141, 143).   Counsel stated that, for a number of reasons, he made a strategic decision to advise against Petitioner testifying, but that whether to testify or not was Petitioner's decision (App. Q at 141, 192, 193, 195, 198).[6]  Counsel admitted that he "clearly" discouraged Petitioner from testifying(App. Q at 143).   Based on the testimony of counsel at the evidentiary hearing, this Court cannot say that counsel's representation on this issue was ineffective.   Although, whether or not a defendant will testify is ultimately the defendant's choice, defense counsel bears the responsibility of advising the defendant of the strategic implications of his choice. *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992).   Furthermore, "if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." *Id.*

Because no evidence other than the testimony of counsel and Petitioner was presented at the evidentiary hearing regarding claim one, the state court found defense counsel to be a more credible witness than Petitioner on this issue.   A state court's determination of a factual issue is entitled to substantial deference under the AEDPA. 28 U.S.C. § 2254(e)(1) (noting that "a determination of a factual issue made by a State court shall be presumed to be correct" and that an "applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").   Petitioner has cited no

---

[6]Counsel listed reasons for discouraging Petitioner from testifying: Petitioner had numerous prior felonies including a false imprisonment conviction and counsel feared that the prior felonies would be brought out in testimony (App. Q at 141-42, 197-98); the court had disallowed evidence regarding Petitioner's treatment of his ex-wife and "any evidence regarding his ex-wife . . . coming in would have just been devastating" (App. Q at 142); and Petitioner's explanations of how the victim received her injuries were not credible since he had no evidence to back them up (App. Q at 144, 166, 197-98).

9

clearly established federal law indicating that this deference to the state court is lessened for a determination of credibility. Federal case law provides that deference to a trial court's credibility determination is <u>heightened</u> on habeas review. *See Gore v. Secretary for D.O.C.*, 492 F.3d 1273 (11th Cir. 2007); *Rice v. Collins*, 546 U.S. 333 (2006) (noting that credibility determinations are accorded even greater deference on habeas review). Petitioner has provided no clear and convincing evidence to rebut the presumption of correctness afforded the state court.

Petitioner cites *Gallego v. United States*, 174 F.3d 1196 (11th Cir. 1999) for the proposition that the state court erred by failing to make explicit credibility determinations explaining why it found counsel a more credible witness than Petitioner (Doc. 1 at 8). Even if the Eleventh Circuit's decisions were considered "clearly established Federal law" under § 2254, *Gallego* is unavailing.[7]  The *Gallego* lower court had determined that "as a matter of law [a] defendant could not carry his burden without presenting some evidence in addition to his own word, which is contrary to counsel's." *Id*. at 1198. Refusing to adopt a per se "credit counsel in case of conflict rule," the Eleventh Circuit rejected the lower court's ruling that an attorney accused of providing ineffective assistance is *automatically* considered to be more credible than a defendant seeking vacation of his sentence. *Id*. The *Gallego* court did not demand that a state court explain its credibility determinations as argued by Petitioner. Given Petitioner's statement made under oath during trial that he was not coerced into waiving his right to testify and counsel's testimony that he did not threaten Petitioner with withdrawal from

---

[7]Clearly established federal law is not the case law of the lower federal courts. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir.2001)(*quoting Williams*, 529 U.S. at 362).

representation, the state court's finding that counsel was the more credible witness is objectively reasonable.

Finally, Petitioner argues that a particular statement made by counsel while explaining why he had discouraged Petitioner's testimony was an admission in the form of a "Freudian Slip" and should be considered evidence of counsel's lack of credibility (Doc. 15 at 3). Specifically, counsel was asked to outline the discussions he had with Petitioner during the course of representation regarding Petitioner's decision of whether to testify. Counsel stated that he explained to Petitioner how his prior felony convictions could possibly be revealed if he took the stand and also told Petitioner that he had no credible explanation for his injuries. Counsel then stated;

> And other reasons I told him not to – I recommended that he not testify, besides the felony, was him possibly opening up the door to Williams Rule evidence regarding his prior aggravated battery. I believe he had a prior false imprisonment conviction, too, where he went to prison for those.

(App. Q at 140-41).  Petitioner provides no clearly established federal law indicating that a corrected misstatement must be considered an admission by a state court or how a state court must weigh such an "admission" when making a credibility determination.[8] Furthermore, it is not clear from the record that the state court did, in fact, fail to consider counsel's statement.

Petitioner has not established that the state court's determination on this issue was either contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light

---

[8]Petitioner argues that "[i]t is well accepted within the scientific field of 'psychiatry' that a 'Freudian Slip' given by an individual under oath, which is properly recorded, is admissible into evidence and is self-authenticating under the 'Frye Test'. *See Frye v. U.S.*. 293 Fed. 1013 (D.C. Cir. 1923)." (Doc. 15 at 3).

of the evidence presented in the state court proceeding.[9] Accordingly, this claim is denied pursuant to U.S.C. § 2254(d).

### B.    Ground Two

As ground two, Petitioner alleges that defense counsel was ineffective by "ignoring his not-guilty plea and conceding guilt without consent." (Doc. 1 at 10). Specifically, Petitioner contends that four statements made by defense counsel during closing arguments "told the jury that the Petitioner was guilty." (Doc. 1 at 12).[10]   Petitioner argues that "counsel's concessions, which were made without [his] consent rendered the Petitioner's NOT GUILTY plea a nullity." (Doc. 1 at 13).   He further contends that trial counsel was constitutionally ineffective because counsel mistakenly believed that he would get a self-defense jury instruction and such belief "evidences the lack of trial experience and knowledge that Counsel had at the time." (Doc. 1 at 14). Petitioner raised this issue as ground four of his Rule 3.850 motion for post-conviction relief and the state court denied relief (App. Q at 459-60).

The state court determined that counsel's decision to argue self-defense was strategic; that defense counsel did not concede guilt during closing argument; and that "counsel properly argued for a possible sel- defense instruction." (App. Q at 459).  The state court pointed to portions of the evidentiary hearing where counsel explained his reason for making his closing argument:

In my opinion, I didn't concede guilt.  I was trying to get him a self-defense

---

[9]Because the performance prong of the ineffective assistance of counsel test cannot be satisfied, there is no need for this Court to reach the prejudice prong of the *Strickland* test.  *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cor. 1995) (citing *Strickland*, 466 U.S. at 697).

[10] In the petition, Petitioner lists four statements made by defense counsel during closing argument. Each statement alludes to the Petitioner exercising self-defense (Doc. 1 at 12).

instruction and I was trying to argue self-defense.  And I told him that I would be doing that and he said that was okay.  I do remember there was confusion about him not wanting me to say that he battered her.  And when I explained self-defense versus battery, I think he understood that I wasn't going to get up there, and say, you know he just attacked her.  My argument was that she attacked him and, you know, she injured herself; you know, her injuries were through her own fault, not because he attacked her or, you know, went out of his way to hit her or anything like that.  I don't remember verbatim what I said, but my intention was not to concede guilt.  It was to argue for self-defense.  And I didn't – I read my closing from the transcript, you know, three or four weeks ago.  My impression was that I didn't concede guilt, that I was arguing for self-defense.

(App. Q at 161).  Later, during cross examination, counsel stated that, when told he planned to argue self-defense, Petitioner told counsel to "do what [he] had to do to get [him] off." (App. Q at 211).  After reviewing the record, this Court determines that Petitioner has not presented clear and convincing evidence to rebut the state court's determination that defense counsel did not concede Petitioner's guilt and that counsel's decision to argue for a possible self-defense instruction was a reasonable strategic decision.

Petitioner's assertions that counsel's strategic decision to argue self-defense was unreasonable is unavailing (Doc. 1 at 15).   A habeas court's scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689.  Counsel cannot be adjudged incompetent for performing in a particular way as long as the approach taken in a case "might be considered sound trial strategy." *Darden v. Wainwright*, 477 U.S. 168, 186 (1986).  Nor does the fact that a particular defense ultimately proves to be unsuccessful demonstrate ineffectiveness.  *Chandler v. United States*, 218 F.3d 1305, 14 (11th Cir. 2000).

Because counsel's conduct is presumed reasonable, for Petitioner to show that counsel's conduct was unreasonable, he must establish that no competent counsel would have taken the action that his counsel took.   *Chandler*, 218 F.3d at 1315.   Nothing in the

13

record indicates that defense counsel's conduct was outside of the range of reasonable conduct or that no competent counsel would have taken similar actions.  Notably, defense counsel expressed concern that Petitioner could not explain his own injuries and counsel's allusions to sel- defense were a possible explanation for the injuries (App. Q at 161).  It was not unreasonable for counsel to attempt an explanation for Petitioner's injuries.[11]

Petitioner relies, without elaboration, on *Francis v. Spraggins*, 720 F.2d 1190 (11th Cir. 1983) in asserting that counsel's actions rendered his not-guilty plea a nullity (Doc. 1 at 13). *Spraggins* does not aid Petitioner.[12]  In *Spraggins*, despite client's denial of participation in the crime, counsel stated, "I think he did, from the evidence that the State has put up, I think he went in the house and I think he committed the crime of murder probably." *Id.* at 1193-95. Noting that the expression of personal belief in guilt would be improper even for a prosecutor, the Eleventh Circuit determined that counsel's conduct was "irrational and rendered his assistance at trial ineffective." *Id.*  In the present case, defense counsel did not concede guilt, but rather chose to allude to a possible attack by the victim in order to explain the scratches and bruises on Petitioner (App. A at T-205-06, 220).  Furthermore, in *Spraggins*, there was no evidence that the defendant consented to his defense counsel's strategy. Rather, the defendant took the stand to declare his innocence during the guilt phase of his trial.  In the

---

[11]Because the performance prong of the ineffective assistance of counsel test cannot be satisfied, there is no need for this Court to reach the prejudice prong of the *Strickland* test.  *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cor. 1995) (citing *Strickland*, 466 U.S. at 697).

[12] Nor does *Brookhart v. Janis*, 384 U.S. 1 (1966), also cited, aid Petitioner (Doc. 1 at 16).  In *Brookhart*, the defendant, in open court, objected to defense counsel informing the judge that he agreed to effectively plead guilty. *Id.* at 7.  The issue in that case was whether counsel has the power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty.  In the present case, the state court determined that there was no admission of guilt (no plea) and that Petitioner agreed to his counsel's strategy.

14

instant case, counsel testified that Petitioner was aware of his intent to argue for self-defense in his closing and that Petitioner consented to such an argument (App. Q at 161, 211).  As discussed in ground one, the state court's implicit determination that defense counsel's testimony was credible is entitled to deference by this court (App. Q at 460).

Petitioner has not established that the state court's determinations on this issue were contrary to, or involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, this claim is denied pursuant to U.S.C. § 2254(d).

### C.    Ground Three

Petitioner alleges that counsel was "Constitutionally ineffective in allowing speedy trial violations to reach Sixth Amendment proportions." (Doc. 1 at 18).  Petitioner makes numerous allegations in his petition regarding trial counsel's ineffectiveness for allowing seventeen months to elapse between counsel's appointment and Petitioner's trial.   Specifically, Petitioner references a communication with counsel in which he stated that he would not waive speedy trial (Doc. 1 at 19) and a motion to dismiss counsel in which he alleges that his right to a speedy trial was being violated (Doc. 1 at 19-20).  Petitioner also alleges that he "never waived his rights on the record at any time for over 17 months." (Doc. 1 at 22).  Petitioner contends that he was prejudiced by this delay because, in the interim, the state was able to locate a damaging witness and initiate "Williams Rule" proceedings[13] and because a

---

[13] *Williams v. Florida*, 110 So. 2d 654 (Fla. 1959) (relevant evidence of collateral crimes is admissible at jury trial when it does not go to prove the bad character or criminal propensity of the defendant but is used to show motive, intent, knowledge, modus operandi, or lack of mistake.

requested defense witness died (Doc. 1 at 18).

Petitioner raised this issue as ground three of his Rule 3.850 motion for post-conviction relief and the state court denied relief (App. Q at 459).  The trial court determined that Petitioner and counsel waived his speedy trial rights and that Petitioner had agreed with counsel that more time was necessary to prepare for trial.  The trial court noted that "[t]he Defendant may not now argue a speedy trial violation when pre-trial discussions with Counsel reflected that the Defendant consented to additional trial preparation." (App. Q at 459).  The record supports the trial court's conclusions.

At the state evidentiary hearing, trial counsel testified that Petitioner gave him names of potential witnesses on a piece-meal basis and it took time to locate and depose the witnesses (Ap. Q at 152). Counsel admitted that Petitioner asked for a speedy trial more than once but he explained to Petitioner that "it was in [Petitioner's] best interest to let [him] fully investigate the case to try to substantiate what [Petitioner] was saying." (App. Q at 153, 207). Counsel stated that Petitioner agreed the investigation should be completed before proceeding to trial and, once discovery was complete, a demand for speedy trial was made and the case proceeded to trial (App. Q at 150-54, 57) (demand for speedy trial made on September 26, 2002). Furthermore, counsel stated that Petitioner had failed to appear at a required court hearing, essentially waiving speedy trial rights by making himself unavailable for court (App. Q at 149-50).

Petitioner has not overcome the burden of rebutting the presumption of correctness of the state court's determination that Petitioner's speedy trial right was waived.  *See* U.S.C. § 2254(e)(1).  Florida law specifically provides:

No demand for speedy trial shall be filed or served unless the accused has

16

a bona fide desire to obtain a trial sooner than otherwise might be provided. A demand for speedy trial shall be considered a pleading that the accused is available for trial, has diligently investigated the case, and is prepared or will be prepared for trial within 5 days. A demand filed by an accused who has not diligently investigated the case or who is not timely prepared for trial shall be stricken as invalid on motion of the prosecuting attorney.

Fla. R. Crim. P. 3.191(g). Therefore, under Florida law, counsel could not have made a demand for speedy trial until he had investigated all matters necessary to complete the discovery process. *See San Martin v. Menendez*, 467 So. 2d 1035, 1037 (Fla. 2d DCA 1985) (speedy trial demand not proper when defendant still engaged in discovery and preparation for trial). Counsel was not ineffective for failing to file a spurious demand for speedy trial.

Even if counsel was ineffective for failing to request a speedy trial, Petitioner's allegations of prejudice are not compelling. In order to demonstrate prejudice under *Strickland*, Petitioner must show that, but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have differed. 466 U.S. at 687-88.[14] Petitioner argues that "due to Counsel's failure to [seek speedy trial], the State initiated '*Williams Rule*' proceedings against the Petitioner in June of 2002. This was well after the speedy trial period expired and was extremely prejudicial to the exercise of the right to trial." (Doc. 1 at 20-21). The record indicates that the state filed a Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts on June 9, 2002 and an amended notice on September 2, 2002. This *Williams* rule evidence involved allegations of Petitioner's battery of his ex-wife. However, on October 17, 2002, the trial court granted defense counsel's motion to strike the

---

[14]Petitioner argues that *Doggett v. United States*, 505 U.S. 647 (1992) provides that "[a]s to the 'prejudice' requirement, that finding does not depend on a Defendant's ability to particularize the prejudicial effects of the delay as long as the accused shows that the delay weakened his defense, which the Petitioner has shown in detail." This argument is unavailing because claim three is parsed in terms of ineffective assistance of counsel which requires the more onerous showing of prejudice under *Strickland* (Doc. 1 at 23).

state's introduction of the evidence and it was not used at trial (App. A at 80).  Because the jury never heard the evidence, Petitioner cannot demonstrate that the results of the trial would have differed if the state had not filed the notice.

Petitioner also alleges that he was prejudiced because a potential witness, Tommy Phillips, died before trial and after the speedy trial time had expired (Doc. 1 at 20).  Petitioner alleges that Phillips would have testified that he heard the victim threaten to have Petitioner "locked up" for being around another woman (Doc. 1 at 20).  Counsel testified that Petitioner never told him about Phillips (App. A at 169).  Counsel also testified that Phillips' statement would have been hearsay (App. A at 169-70).  Petitioner's claim that Phillips' testimony may have discredited the victim is conclusory and speculative and does not amount to a showing of prejudice.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (Petitioner not entitled to an evidentiary hearing or federal habeas relief on his ineffective assistance of counsel claims where the claims are conclusory or wholly incredible); *Strickland*, 466 U.S. at 692 ("[T]hat the error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.").

This Court concludes that Petitioner has not established that the state court's determination was either contrary to, or an unreasonable application of, federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[15]  Accordingly, this claim is denied pursuant to § 2254(d).

---

[15]Petitioner again argues that, because no credibility determinations were made by the state court, its findings cannot be presumed correct by this Court (Doc. 1 at 24).  As discussed in ground one, the state court's implicit determination that defense counsel's testimony was more credible than Petitioner's allegations is entitled to deference by this court (App. Q at 460).

### D.   Ground Four

As ground four, Petitioner alleges that counsel was ineffective for failing to timely obtain phone records that may have shown that calls were made from the victim's home phone on the night of the attack (Doc. 1 at 25-27).   Petitioner alleges that the records would have shown that the victim lied about not being allowed to use the phone that night, thus negating the false imprisonment count (Doc. 1 at 25).   Petitioner contends that, "[d]ue to the delay of Counsel, the records became unavailable and the victim was able to testify falsely, without impeachment." (Doc. 1 at 25).   In ground five of Petitioner's 3.850 motion for post-conviction relief, Petitioner alleged that counsel was deficient for failing to "obtain and utilize the records for which he had a valid order to receive, and instead obtained only the Sprint cell phone records." (App. Q at 22).   The trial court denied relief noting that Petitioner had shown neither deficient performance nor prejudice as a result of counsel's actions regarding the phone records (App. Q at 460-61).[16]

The record supports the state court's determination.   The telephone record at issue was available no more than 255 days after December 28, 2000 (App. Q at 111-12).   Counsel was not appointed until almost six months later (App. Q at 150).[17]   Petitioner argues:

> The first time counsel spoke with the Petitioner in October 2001, he informed
> counsel that the victim used the phone numerous times on the night in

---

[16] To the extent that Petitioner is presenting a claim for relief that has not been previously evaluated by the state court, this Court may not consider it. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) (habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts).   Therefore, this Court will review claim four only to the extent that it is a clarification of the claim presented in the state court proceedings. *See Kelley v. Secretary for D.O.C.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (habeas petitioners are permitted to clarify arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance).

[17] Petitioner waived his right to an attorney until May 22, 2001.

question.  When counsel questioned the victim during her deposition she admitted that she did not remember "all" who she talked to on that night. Despite the pleas of the Petitioner, and the victim's answers during her October 29, 2001 deposition, counsel waited until May of 2002 request the home phone records.  By that time the records had been purged and were unavailable, to the disadvantage of the Petitioner.

(Doc. 15 at 30).  Because the phone records were available only through September of 2001, this statement makes it clear that Petitioner did not inform counsel that the victim may have used the phone on the night of the attack until after the records had become unavailable.[18] It was reasonable for counsel to request the phone records only *after* learning of the victim's alleged phone use.  *See Strickland*, 466 U.S. at 691 (whether an investigation decision is reasonable depends critically on information supplied by the defendant).  Counsel's inaction had no effect, prejudicial or otherwise, on the outcome of the trial.  Furthermore, Petitioner has not shown that the missing phone records, even if timely provided, would have, within a reasonable probability, changed the outcome of his trial.  His speculation and conjecture about what the records may have shown is insufficient to warrant relief.  *See Tejada*, 941 F.2d at 1559 (Petitioner not entitled to an evidentiary hearing or federal habeas relief on his ineffective assistance of counsel claims where the claims are conclusory or wholly incredible); *Strickland*, 466 U.S. at 692 ("[T]hat the error had some conceivable effect on the outcome of the proceeding" is insufficient to show prejudice.").

The Court finds that Petitioner has failed to establish that the state court's determination was either contrary to or an unreasonable application of federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented

---

[18]  Petitioner also testified at the evidentiary hearing that he did not inform counsel of need for phone records until October of 2001 ( App. Q at 323).

in the state court proceeding.  Accordingly, this claim is denied pursuant to § 2254(d).

### E.     Ground Five

As ground five, Petitioner alleges that counsel was ineffective for failing to present testimony of defense witnesses whose names were provided to counsel before trial (Doc. 1 at 31).  Petitioner alleges that the witnesses would have impeached the victim and altered the verdict (Doc. 1 at 31).  Petitioner raised this issue as part of ground six of his Rule 3.850 motion for post-conviction relief (App. Q at 24). Petitioner's Rule 3.850 motion names seven witnesses and gives specific details as to the expected contents of their testimony (App. Q at 25-43).  The state court denied relief stating:

> The Defendant, through seven separate claims, alleges that Counsel failed to call specific witnesses whose testimony would have resulted in a reasonable probability of a different trial outcome.  During the evidentiary hearing, Counsel adequately and thoroughly explained his reasoning for not calling or deposing the alleged witnesses.  "The decision on whether to interview, depose, cross examine certain witnesses or potential witnesses are tactical choices and are within the standard of competency expected." *Magill v. State*, 457 So. 2d 1367, 70 (Fla. 1984).  The Court finds that Counsel's actions/inactions do not rise to the level of ineffective assistance of counsel and fail to demonstrate a reasonable probability of a different trial outcome.  The Defendant's claim is denied.

(App. Q at 461) (citations to record omitted).  The record supports the trial court's conclusions. At the evidentiary hearing, counsel testified that he spoke to every witness whose name was provided by Petitioner with the exception of Cheryl Hall, whom neither he nor his investigator could locate (App. Q at 145-47).  Counsel testified that the witnesses provided by Petitioner provided no helpful admissible evidence and that the witnesses' statements did not

substantiate what the Petitioner had indicated they would (App. Q at 149).[19]

Counsel testified that he weighed whether or not the witnesses' testimony was beneficial enough to give up the "sandwich" of opening and rebuttal closing arguments and determined that it was not (App. Q at 278).[20]  He noted that "the benefit of having the opening and closing far outweighed calling someone to testify that may or may not help." (App. Q at 149).   Trial counsel's decision to forego calling these witnesses was quintessential trial strategy. *See Blanco v. Singletary,* 943 F.2d 1477, 1495 (11th Cir.1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."); *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir.1995) ("[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess").  Furthermore, Florida courts have held that it is a reasonable defense strategy for counsel to consider the benefits of giving two closing arguments when deciding whether to present the testimony of witnesses. *See  Evans v. State*, 995 So. 2d 933, 945 n.16 (Fla. 2008); *Beasley v. State*, 18 So.3d 473, 491-92 (Fla. 2009). Petitioner has failed to show that counsel's strategic decision to not call the witnesses was unreasonable.

Because the performance prong of the ineffective assistance of counsel test cannot be

---

[19]  Specifically, counsel testified that Julie Fieldhouse's testimony would have substantiated the victim's statements (App. Q at 165); that Hob Reardon appeared sympathetic to the victim (App. Q at 167-69, 223); that Everett Cornwell told him nothing that would have been admissible in court (App. Q at 174); that Steve West's knowledge regarding the victim's dishonesty was inadmissible opinion testimony (App. Q at 179, 203, 229-30, 256); and that nothing Charles Rudd told him during the interview was helpful to Petitioner (App. Q at 182).  Counsel testified that Tommy Phillips name was not provided to him and as a result, no investigation was conducted (App. Q at 169, 223-24).   However, counsel noted that Phillips' testimony would have constituted hearsay (App. Q at 169-70).

[20] In 2002, under Florida law, the defense was permitted to have both the opening and rebuttal closing arguments if it presented no defense evidence.  The Legislature has since enacted Florida Statute § 918.19 (2007) which provides that the State has opening and rebuttal closing arguments even if the defense presents no evidence at trial.

satisfied, there is no need for this Court to reach the prejudice prong of the *Strickland* test. *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697). Accordingly, this claim is denied pursuant to 18 U.S.C. § 2254(d).

### F.   Ground Six

In ground six, Petitioner alleges that counsel failed to inform him of the true sentencing exposure he faced before rejecting a favorable plea offer (Doc. 1 at 35).  Petitioner alleges that "[a]t no time prior to voir dire did the State or trial counsel mention the possibility of receiving a habitual offender sentence with 30 years in prison." (Doc. 1 at 37).  Petitioner alleges that, at the time he rejected a plea offer of five years in prison followed by five years of probation, he believed that he faced a maximum sentence of fifteen years in prison (Doc. 1 at 38).  Petitioner presented this claim as issue seven of his rule 3.850 motion for post conviction relief and the trial court denied relief stating:

> The Defendant alleges that Counsel was ineffective for failing to inform him of his exposure to habitual offender status.  Evidentiary hearing testimony and the Voir Dire Examination Excerpt clearly and conclusively refute the Defendant's seventh claim.  The record demonstrates that Counsel notified the Defendant that he was facing up to forty (40) years in the Department of Corrections and that the Defendant should accept the State's plea deal of five (5) years.  The Defendant's seventh claim is denied.

(App. Q at 461-62) (citations to record omitted).

The record clearly supports the trial court's determinations.  At the evidentiary hearing, counsel testified that he advised Petitioner to take the state's five year offer because he could get up to forty years in prison if convicted (App, Q at 155-57, 211).  Furthermore, in preparation for the evidentiary hearing, counsel provided the transcript of an October 28, 2002 pre-trial, off-the-record discussion regarding the plea agreement in which the state

made clear that it intended to seek sentencing as a habitual offender (App. Q at 159). The

transcript stated:

> STATE: I would also like to put on the record, 'cause I don't believe we had an opportunity to do that, but the State's offer in this case is: The defendant has been given notice of treatment as a prison releasee reoffender as he was released from prison approximately one year prior to the occurrence of the charged crimes of aggravated battery and false imprisonment.
>
> He also, having done a little more research, qualifies as a habitual offender, meaning if convicted as charged he would be facing a forty year sentence.  The State is now verbally giving notice that we would intend to seek that sentence if a guilty verdict comes back.
>
> We can follow that up in writing.  The offer in this case is to plead to the false imprisonment count, which is a third degree felony, and receive a sentence of five years in the Department of Corrections as a prison releasee reoffender and plead to the aggravated battery.
>
> We'll waive prison releasee reoffender and habitual on that. Five years consecutive probation.
>
> COUNSEL: Consecutive or concurrent?
>
> STATE: It has to be consecutive.
>
> COUNSEL: Probation?
>
> COURT: Mr. Little, I take it your client has rejected that offer and is prepared to proceed to trial?
>
> COUNSEL: I believe so.  Is that true?  Do you want a trial?
>
> DEFENDANT: Yes, sir.

(App. Q at 520-21).  This pre-trial conversation shows that Petitioner was fully informed the

state would seek to sentence him as a habitual offender.  Although Petitioner testified at the

evidentiary hearing that he was "not sure" as to whether the court had gone over habitual

felony filing prior to jury selection, the court noted that it was standard practice to do so (App. Q at 325). The transcript excerpt, counsel's testimony, the trial court's observation, and Petitioner's initial equivocation completely refute Petitioner's allegation that "[a]t no time prior to voir dire did the State or trial counsel mention the possibility of receiving a habitual offender sentence with 30 years in prison." (Doc. 1 at 16).[21] Furthermore, Petitioner made it clear prior to trial that he would not accept a plea agreement (App. A at 34, 44).

Petitioner has failed to establish that the state court's determination was either contrary to or an unreasonable application of federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the state court proceeding. Accordingly, claim six is denied pursuant to § 2254(d).

## G. Ground Seven

As ground seven, Petitioner alleges that he was denied due process and fair trial rights due to the inappropriate conduct of a juror (Doc. 1 at 41). Specifically, Petitioner states that a jury member's mother-in-law[22] was in the courtroom when a court employee referred to

---

[21]Petitioner makes the bold assertion that "the 'excerpt' produced by counsel was false, not as one word of the 'excerpt' was contained in the certified copy of the Voir Dire." (Doc. 15 at 35). Petitioner filed a Motion for Relief from Judgment with the state court arguing that defense counsel "made a conscious decision to mislead this court and commit fraud to eliminate a finding of ineffective assistance of counsel. This was not a 'mistake', but a deliberate course of action to deny the defendant the opportunity to seek redress for the violation of his constitutional right to effective counsel." (App. EE at 5). The trial court denied the motion on June 5, 2007 and the Florida Fifth District Court of Appeal *per curiam* affirmed on January 29, 2008 (App. HH). Petitioner's claim that counsel fabricated a portion of the trial transcript in order to foil Petitioner's ineffective assistance of counsel claim is not only clearly refuted by the record, it is a wholly incredible claim that this Court is not required to consider. *See Agosto v. Immigration and Naturalization Service*, 436 U.S. 748, 772-73 (1978). Furthermore, when introducing the excerpt, counsel informed the court that the excerpt had never been transcribed, but that he had remembered the conversation and asked the court reporter to transcribe it for the evidentiary hearing (App. Q at 158-59). As such, Petitioner's allegations that defense counsel committed fraud will not be entertained by this Court. *Tejada v. Dugger*, 941 F.2d at 1559 (Petitioner not entitled to an evidentiary hearing or federal habeas relief on his ineffective assistance of counsel claims where the claims are wholly incredible)

[22]The record indicates that the juror's mother, not her mother-in-law, was in the courtroom (App. A at 131-136)

Petitioner as "the guy who just did 10 years in prison for running over his wife." (Doc. 1 at 20).
Petitioner notes that the mother-in-law took recess breaks and lunch with the juror and may
have impermissibly passed the information onto the juror (Doc. 1 at 43).   This issue was
raised on direct appeal in Petitioner's *pro se* initial brief and the appellate court affirmed (App.
G, J).   The record does not support a claim for relief.

After trial, Petitioner moved the trial court to allow questioning of the juror who's mother
may have overheard a comment regarding one of Petitioner's prior convictions (App. A at
131).   On November 27, 2002, the trial court held a hearing on the motion and, citing Florida
law, denied the motion ( App. A at 136). To the extent Petitioner alleges that the trial court
incorrectly applied Florida law, Petitioner has stated no claim for which federal habeas corpus
relief is available.   *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's
interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since
no question of a constitutional nature is involved.").

Petitioner cites no clearly established federal law for the proposition that a trial court
is required to question a juror when it is merely alleged that an acquaintance of the juror may
have heard inadmissible information and may have subsequently given that information on
to a juror.   The Eleventh Circuit has concluded the opposite.   A trial court has broad discretion
as to how to proceed when confronted with an allegation of jury misconduct, including
discretion with regard to the initial decision as to whether to interrogate jurors. *United States
v. Yonn*, 702 F.2d 1341, 45 (11th Cir. 1983).   The more speculative or unsubstantiated an
allegation of juror misconduct, the less burden there is for a trial court to investigate. *United
States v. Caldwell*, 776 F.2d 989, 998 (11th Cir. 1985).   In factually analogous *United States*

*v. Barshov*, the Eleventh Circuit determined that a trial court did not abuse its discretion by refusing to conduct an inquiry in light of allegations that a juror's son may have influenced the jury where the allegations were based upon mere speculation due to the son's close following of the trial proceedings and his "peculiar" behavior around the courtroom. 733 F.2d 842 (11th Cir. 1984).   The court determined that "[i]n the absence of a colorable showing that the conduct complained of impugned in any way the integrity of the trial process, the district court was not required to make further inquiries or to conduct a hearing, and its refusal to do so did not constitute and abuse of discretion." *Id.* at 852.

In the instant case, the state court considered the affidavit and allegations made by Petitioner (App. A at 287-298).   Defense counsel presented nothing more than his personal belief that, had the mother actually overheard the comment made regarding Petitioner's prior conviction, she would not have kept the information to herself (App. A at 290) ( "[i]t's hard for me to believe that the mother spoke to her daughter that she would be able to contain herself and hold back the information that she overheard.").   Because no evidence other than mere speculation was presented to the trial court regarding juror misconduct, it was reasonable for the trial court to refuse Petitioner's request to question the juror.   Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d)(2).

## H.   Ground Eight

As ground eight, Petitioner argues that the cumulative effect of the errors at trial denied his right to a fair trial (Doc. 1 at 46).   Petitioner raised this as issue eight in his rule 3.850 motion for post conviction relief and the trial court denied relief (App. Q at 462).   The record supports the trial court's conclusion.

27

The cumulative error doctrine provides that an aggregation of nonreversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of a constitutional right to a fair trial, which calls for reversal. *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir.2005) (quotation omitted). A claim of cumulative error is addressed by first considering the validity of each claim individually, and then examining any errors in the aggregate and the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial. *See United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir.1997). However, where there is no error or only a single error, there can be no cumulative error. *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir.2004).  This Court has addressed each of Petitioner's claims and found no individual errors.  Accordingly, no cumulative errors can exist and this claim is denied

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. 1) filed by Kyle C. Sundberg is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of Court shall enter judgment accordingly.

2.      The Clerk of Court is directed to close this case.

**DONE AND ORDERED** at Ocala, Florida, this 7th day of October 2010.

_____
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record
              Kyle C. Sundberg

28